FILED
OCT 2 3 2012
OCT 23 2012
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACK MANN,
    Plaintiff,

v.

DR. PAUL HARVEY, AS AN INDIVIDUAL,
    Defendant.

Case No. 11C4625

Judge Lefkow

## MOTION FOR JUDGEMENT ON THE RECORD

Plaintiff Jack Mann has given enough proof of Defendants inaction, deliberate indifference, personal animus, and failure to offer treatment, alternative treatment, medication known as PROVIGIL, alternatives to the medication known as PROVIGIL, or any adherence to the USPHS or BOP research, development, or implementation of Patient Treatment Plans for Judgement On The Record. Defendant was not working within the scope of his federal employment when failing to treat Plaintiff with proper care. Also treating Plaintiff with personal animus was not within the scope of Defendant's scope of employment. The actions of deliberate indifference, and personal animus are not within the Defendants scope of employment.

Due to the material fact that Defendant was acting within his federal employment when these acts occurred a Judgement On The Record should be granted.

### FACTS

1. Plaintiff was housed in MCC Chicago from 1/10/2010 until moved to FCI Milan on or about 7/15/2011. As a inmate/prisoner at MCC Chicago Plaintiff's case was well known to staff members at MCC Chicago due to articles in local and national papers, web information, and the internal portion of Plaintiff's Central File known to Bureau

of Prisons (BOP) Staff as the "Exempt" portion.

2. From the date of intake at MCC Chicago until the date the drug, PROVIGIL was actually prescribed at FCI Milan the Plaintiff suffered drom oversleep, unwakefulness throughout the "waking hours", and permenant memory loss. During the time Plaintiff was held at MCC Chicago even his inability to gain the needed medication known as PROVIGIL another inmate [Marvin Berkowitz] was party to the mistreatment of Plaintiff by Lt. Collins, who was the SHU Lt. during this period of time. During the period of time that Plaintiff was sharing a cell with Marvin Berkowitz, when the SHU Lt. came to the cell, Plaintiff would be woken up (as he slept constantly due to not being given his medically necessary medication) and then ask the SHU Lt. through the two to three inch thick door if he could see Dr. Paul Harvey, again to attempt to be given the medication known as PROVIGIL. Lt. Collins then told Plaintiff that he needed help, and tookit upon herself to yell down the hall to Dr. Dana, the head of psychology, then chase after him to attempt to force Plaintiff to speak to Dr. Dana.

3. A meeting was initiated by Lt. Collins (SHU Lt.) at MCC Chicago between Plaintiff and Dr. Dana. The meeting was held in the same room where Dr. Harvey previously sighed and rolled his eyes multiple times and told Plaintiff, "You won't be getting that" with the verbal inflectionon the words YOU and THAT. Dr. Dana went on to explain that there was no way Plaintiff would be getting this medication as the medical staff currently in place would not prescribe it. The inference to Plaintiff was that the Defendant would not be approving this needed medical attention for Plaintiff's serious medical need.

4. During Plaintiff's imprisonment at MCC Chicago he was denied the medication known as PROVIGIL multiple times by multiple staff members. Upon intake into MCC Chicago PROVIGIL was denied by the Corrections Officer who spokewith FBI Special Agent, Matt Alcoke. FBI Special Agent Matt Alcoke brought Plaintiff's medication, PROVIGIL, to MCC Chicago with a specific request to a Corrections Officer at the facility to assure this was given to Plaintiff through the proper channels. The denial of the medication by the Corrections Officer, the denial of the medication by Defendant, the denial of the medication by other HSD Staff (Medical Staff) members, the denial of alternative medication by Defendant, the denial of alternative medication by alternative members of the HSD Staff (Medical Staff), the denial of alternative treatment by Defendant, the denial of alternative treatment by HSD Staff (Medical Staff) were all the instrumental causes of Plaintiff's constant state of; unwakefulness, depressive state of mind, inability to perform Activities of Daily Living (ADL's), and permenant loss of memory. These causes are only known as Plaintiff is able to identify these specific injuries. The unknown injuries are the most haunting as there is not much known about the prolonged mistreatment of it by deliberate indifference by a doctor in the medical profession. Unknown injuries are bound to be expressed throughout Plaintiff's life in and out of federal custody.

5. Plaintiff was denied the medication known as PROVIGIL by all HSD (Medical Staff) Staff members he came into contact with through out his incarceration there. The denying members of the HSD Staff (Medical Staff) were; Defendant (Dr. Paul Harvey), Dr. Bonnie NOwakowski, Miss Vera Cruz, Miss Hernandez due to the drug not

not being prescribed by Defendant. All of them refused the drug, PROVIGIL, multiple times citing its expense and also not being in the BOP formulary medication list. At no time did anymember of the HSD Staff (Medical Staff) at MCC Chicago (including Defendant) relay the fact that there is a specific process to aquire an exception for various types of medication.

6. Defendant refused to prescribe the medication known as PROVIGIL which prompted conversations between Plaintiff and Dr. Bonnie Nowakowski. During one of these conversations Dr. Bonnie Nowakowski stated her opinion that, he (Defendant), was "a dinosaur. You won't get that drug while heis in charge here." Dr. Bonnie Nowakowski made multiple comments to Plaintiff about the culture that the Defendant brings to MCC Chicago, and it was not thought of as a positive one.

7. Defendant never gave Plaintiff a full medical examination at any time specifically for the complaints relating to Traumatic Brain Injury. Defendant never gave Plaintiff any documented support, reason, or statement for not conforming to care prescribing the prescription for a serious medical condition. Defendant never offered a substitute to the medication known as PROVIGIL, nor did the Defendant offer any alternative treatments for Plaintiff's serious medical condition. This patient care was not given **until** Plaintiff arrived at FCI Milan.

8. Defendant was not acting within the scope of his employment when he failed to prescribethe drug PROVIGIL to Plaintiff. Should this motion for Judgement On The Record not be granted the information in all manuals for employees of USPHS and BOP HSD Staff (Medical Staff) will be required to show that Defendant was **not** acting

in the scope of his employment as well as show that Defendant is not directed through said manuals to act with deliberate indifference or personal animus to patients who are pre trial or in BOP custody.

9. Defendant was not acting within the scope of his employment when he treated Plaintiff with personal "animus". The manuals from BOP as well as USPHS (United States Public Health Service) will show that there is no portion of patient care directives, manuals, or paperwork for employees (memos, e mails, job description, or any other memorandum or printed item for the job which direct employees of the USPHS or BOP to treat patients with personal "animus". By choosing **not** to prescribe the medication known as PROVIGIL, not offering alternative medications, and failing to offer alternative treatments the Defendant was, in fact, acting with personal animus toward the Plaintiff. Further, should this motion be denied, a discovery period will show how much internal correspondence between staff was done with respect to the Plaintiff's serious medical need for the drug PROVIGIL.

10. Upon being transferred from MCC Chicago to FCI Milan located in Milan, Michigan, proof of the ongoing animus and deliberate indifference by the Defendant became totally clear. Dr. Malatinsky, in accordance with BOP and/or USPHS manuals and directives for creating and maintaining treatment plans, went through all of the Plaintiff's prior caregiver medical records. Dr. Malatinsky reviewed these past medical records **with the Plaintiff**, in an exam room at FCI Milan. Dr. Malatinsky asked Plaintiff multiple questions regarding Plaintiff's serious medical issue, the history of that issue, and found that the drug PROVIGIL was medically necessary. Dr. Malatinsky's immediate reaction was to put in a request for a

**non formulary exception** as to the need of PROVIGIL for Plaintiff's serious medical condition.

11. Internal e mails between Defendant and other HSD Staff (Medical Staff) must be shown to see exactly what was stated with respect to the ongoing treatment, or lack of treatment of the Plaintiff. Information sought is only with respect to the treatment of Plaintiff by HSD Staff (Medical Staff) at MCC Chicago, including any and all e mails, internal or otherwise, memos, or internal correspondence to and from any member of the general staff to HSD Staff (Medical Staff) or vice versa in regards to Plaintiff's medical needs. Further, to establish the fact that there was knowledge of the ongoing need for medical treatment for TBI the Plaintiff's Central File "EXEMPT" portion must be released by the BOP to the Court, which will show the internal e mails about Plaintiff and his condition. While this "EXEMPT" portion of Plaintiff's Central File is rarely seen, this particular case makes the release of the USPHS and/or BOP patient care manuals, directives, or any order of operations for patient care, as well as any "EXEMPT" portion of Plaintiff's Central File, which are absolutely necessary for full disclosure and discovery. Should the Court rule for the Plaintiff in this motion these items will be moot.

    Plaintiff prays the Court will rule a Judgement of Record in this case as the Defendant has been denied the ability to be dismissed from this suit on multiple occasions.

    Plaintiff prays the Court's Judgement of Record will be for the full amount for both causes of action; Bivens claim and FTCA claim.

    For the foregoing reasons the Bivens Claim and the FTCA Claim

should be given Judgement On The Record in favor of the Plaintiff. I, Jack Mann, declare under penalty of perjury declare that the foregoing is true and correct.

Date: 10/16/2012

*Jack Mann* (signature)
Jack Mann
Reg No. 22865-424
FCI MILAN
P.O. BOX 1000
Milan, MI 48160

CERTIFICATE OF SERVICE

I, Jack Mann, hereby swear under penalty of perjury that this MOTION FOR JUDGEMENT ON THE RECORD was placed in the U.S. Mail with First Class postage at FCI, Milan in Milan, Michigan. The above named motion was sent to PRISONER CORRESPONDENCE, 219 S. Dearborn, Chicago, IL 60604. A copy is meant to go to HARPREET K. CHAHAL, AUSA, 219 S. Dearborn, Chicago, IL 60604 via the PRISONER CORRESPONDENCE department.

Date: 10/16/2012

Jack Mann