UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACK MANN (#22865-424), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 C 4625 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| DR. HARVEY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, a federal prisoner, presently in custody at Milan-FCI, has brought this *pro se* civil rights action pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). The plaintiff brings suit against Dr. Paul Harvey, a physician at the MCC, whom the plaintiff represents to be the Regional Medical Director of the Federal Bureau of Prisons, alleging that Dr. Harvey violated his constitutional rights by acting with deliberate indifference to his medical needs. More specifically, the plaintiff alleges that Dr. Harvey refused to prescribe Provigil for him because it is not on the Bureau of Prisons' formulary list. The plaintiff had been prescribed Provigil prior to incarceration for the collateral effects of a traumatic brain injury. This matter is before the Court for ruling on defendant Harvey's motion for summary judgment [document no. 33], and the plaintiff's cross-motion for summary judgment [document no. 113]. For the reasons stated in this order, the defendant's motion is granted, and the plaintiff's motion is denied.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the Court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986)).

However, Fed. R. Civ. P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010) (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008)).

> Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file
>
>> (3) a concise response to the movant's statement that shall contain:
>>
>> (A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and
>>
>> (B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>>
>> (C) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon...[.]

L.R. 56.1(b)(3) (N.D. Ill.).

The Court may rigorously enforce compliance with Local Rule 56.1 (N.D. Ill.). *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings") (citing *Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)). "We have ... repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

Neither party strictly adhered to the Local Rule, instead including multiple facts in one "statement of fact," indulging in argument, making legal conclusions instead of stating fact, and including information not material to the question of whether the defendant acted within the scope of his employment when he declined to prescribe the drug Provigil to the plaintiff at the

MCC. However, all statements of fact are supported by citations to the record, and there is, in actuality, very little disagreement between the parties as to what the facts are.

Accordingly, the Court will consider factual assertions made in all of the summary judgment materials, to the extent that the facts asserted could be properly testified about based on personal knowledge. Fed. R. Evid. 602.

## FACTS

The plaintiff, Jack Mann, is a prisoner in federal custody at FCI Milan, in Milan Michigan, and was formerly housed at the Chicago Metropolitan Correctional Center (MCC). He filed a pro se complaint pursuant to 28 U.S.C. § 1331, and *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). (*See* plaintiff's complaint, docket no. 1). Prior to the plaintiff's incarceration at the MCC, he suffered a traumatic brain injury. (*See* plaintiff's statement of additional facts, ¶ 3). The plaintiff alleges that Dr. Harvey refused to prescribe Provigil for him because it is not on the Bureau of Prisons' formulary list. (*See* plaintiff's complaint, docket no. 1, p. 4). The plaintiff alleges that the defendant's denial of access to Provigil constitutes gross negligence. *Id*.

The defendant has been assigned to the North Central Regional Office of the BOP as the Medical Director from May 2009 to the present. (See the defendant's statement of facts ¶ 1). He was also assigned to the Metropolitan Correctional Center in Chicago (MCC) as the Clinical Director from August 2007 through August 2011. (*Id*.) As a physician for the Bureau of Prisons, the defendant has a duty to effectively deliver medically necessary health care to inmates in accordance with accepted standards of care. (See the plaintiff's additional statement of facts, ¶ 1).

During his tenure as the Regional Medical Director, the defendant provided direct medical care to federal inmates detained at the Metropolitan Correctional Center (MCC). (See the defendant's statement of facts ¶ 2). The patient care included evaluating patients, diagnosing illnesses and prescribing medications. (*Id.*) As a pre-trial detention facility, MCC Chicago had the responsibility to treat a wide range of medical conditions, including inmates with a history of traumatic brain injury. (*Id.*) As the Regional Medical Director, Dr. Harvey was also responsible for reviewing non-formulary requests from physicians in the North Central Region and reviewing consults submitted for elective medical care. (*Id.*)

Medical records indicate that the defendant met with the plaintiff directly on two occasions on Bureau of Prisons premises and co-signed for mid-level professionals on seven occasions at the MCC from January 2010 through October 2011. (See the defendant's statements of facts ¶¶ 3 and 5). The plaintiff disagrees with the characterization of the meetings as "treatment" because, in part, the defendant did not prescribe Provigil for him. (See the plaintiff's response to the defendant's statement of facts, ¶ 3). The plaintiff informed the defendant of his pre-existing traumatic brain injury at their first meeting. (See the plaintiff's statement of additional facts, ¶ 3).

At the initial meeting on January 14, 2010, the plaintiff informed the defendant that he had an existing prescription for Provigil upon entering the MCC, but that the plaintiff did not bring any of the previously prescribed Provigil with him to the MCC. (See the plaintiff's statement of additional facts, ¶ 4, and see the plaintiff's complaint, p. 13). The defendant informed the plaintiff that he would not be prescribing Provigil for him at the MCC. (See the plaintiff's statement of additional facts, ¶ 5). The defendant testified in deposition that the reason he did not prescribe the plaintiff Provigil was because it was not approved by the federal

Food and Drug Administration for treatment of collateral effects of traumatic brain injury. (See the plaintiff's L.R. 56.1 statement, Exhibit B, def. deposition, p. 11:5-12).

The defendant informed the plaintiff on March 26, 2010, that he would not be prescribed Provigil because he was observed to be medically stable since the medication was discontinued and because the need for the medication was not clinically indicated. (*See* plaintiff's complaint, docket no. 1, p. 13). The plaintiff believed that the defendant's response in denying him a prescription for Provigil was dismissive and curt. *Id.* The defendant did not review the plaintiff's medical records prior to deciding not to prescribe him Provigil. (See the plaintiff's statement of additional facts, ¶ 8).

The defendant again declined to prescribe Provigil for the plaintiff on April 15, 2011, after reviewing the plaintiff's outside medical records. (See the plaintiff's statement of additional facts, ¶ 9).

When the plaintiff left the MCC and was transferred to FCI-Milan, the doctor treating him there prescribed Provigil for the plaintiff, and the defendant approved the prescription in his capacity as the Regional Medical Director on January 9, 2012. (See the plaintiff's statement of additional facts, ¶ 13). The documents authorizing the plaintiff's prescription for Provigil indicated that the drug historically had reversed the adverse collateral effects of the plaintiff's injuries, that the plaintiff "improved greatly" after being prescribed Provigil in 2004, and the reasons why formulary medications should not be used to treat the plaintiff. (See the plaintiff's statement of additional facts, ¶ 14). The plaintiff was also enrolled in the chronic care clinic at Milan in order to treat his history of traumatic brain injury. (See the plaintiff's statement of additional facts, ¶ 15).

<u>ANALYSIS</u>

The defendant's motion for summary judgment asks the court to decide a narrow question. It does not argue that the defendant was not deliberately different, rather it asks whether, in denying the plaintiff a prescription for Provigil while he was incarcerated at the MCC, the defendant was acting within the scope of his employment. The reason for this narrow inquiry is that pursuant to 42 U.S.C. § 233(a), a suit against the government under the FTCA is the exclusive remedy for a claim against a member of the Public Health Service (PHS) involving the performance of medical or related functions within the scope of the PHS member's employment, including treatment of or failure to treat an inmate. *Hui v. Castaneda*, 130 S. Ct. 1845, 1851, 176 L. Ed. 2d 703 (2010). Federal law governs whether a federal employee was acting within the scope of his employment, *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 435 (1995), but a federal court looks to the law of the state where the alleged acts took place, in this case Illinois. *See Rappe v. Harvey*, Case No. 10 C 4636, 2011 U.S. Dist. LEXIS 122462 (N.D. Ill.) (Kennelly, J.); *see also Snodgrass v. Jones*, 957 F. 2d 482, 485 (7th Cir. 1992).

Under Illinois law, "no precise definition has been accorded the term 'scope of employment,' but broad criteria have been enunciated." *Taboas v. Mlynczak*, 149 F.3d 576, 582 (7th Cir, 1998); *quoting Pyne v. Witmer*, 129 Ill. 2d 351, (Ill. 1989) (quotation and citation omitted). An employee's action falls within the scope of employment if "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master." *Taboas v. Mlynczak*, 149 F.3d at 582 (*citing* Restatement (Second) of Agency § 228 (1958)).

In support of his motion, the defendant cites to a case in which a police officer who twice shot a prone arrestee in the head was determined by the court to be acting within the scope of his employment. *See Graham v. Sauk Prairie Police Commision*, 915 F.2d 1085 (7th Cir. 1990). The court held that the police officer's actions were *unquestionably* within the scope of his employment because they were not disconnected from the type of services ordinarily contemplated by a police officer. *Id.* at 1085 (emphasis in the original). In its analysis, the *Graham* court stressed the fact that the officer, as in the instant case, was on duty, in uniform, and encountered the plaintiff only as a result of conducting official police business. *Id.* The defendant in the present case was working at the MCC in his capacity as its clinical director, evaluating the plaintiff on initial intake when he made his decision to deny him a prescription for Provigil. Accordingly, like the police officer in *Graham*, no reasonable jury could infer that he was acting outside of the scope of his employment.

The plaintiff argues that in denying him the prescription for Provigil, the defendant was rude, curt, and dismissive. However, ulterior motives, even if malicious and improper, do not change the objective determination of the scope of employment. *Wilson v. City of Chicago*, 900 F. Supp. 1015, 1030 (N.D. Ill) (1990) (Gettleman, J.). To the extent that the plaintiff argues that the defendant acted in a way that violated BOP rules or protocols, the court has held that so long as the services contemplated, if not the outcome, further the purpose of his employment, they are within its scope. *Hibma v. Odegaard*, 769 F.2d 1147, 1153 (7th Cir. 1985) (employees acted within scope of employment in performing job duties even though they used improper methods of carrying out those duties).

The plaintiff also argues that once he was transferred to FCI Milan, his physician there prescribed him Provigil, and the defendant approved the prescription, in his capacity as the

8

Regional Medical Director for the Bureau of Prisons. This argument is flawed because the decision to approve was made in a different employment role (Regional Medical Director not Clinical Director of the MCC) and was upon the recommendation/prescription of another doctor. The decision to approve the prescription of another doctor was within the scope of the defendant's employment as Regional Medical Director, just as his decision to refuse to prescribe, while the plaintiff was at the MCC was within the scope of his employment as the Clinical Director at the MCC.

Finally, the plaintiff argues that the defendant not only denied him the prescription for Provigil, he also refused to provide any kind of alternative treatment. However, the record indicates that after the initial intake and decision not to prescribe Provigil, the defendant reviewed the plaintiff's case on March 26, 2010, that the plaintiff was observed to be medically stable since being taken off the medication upon intake on January 14, 2010. The defendant again denied the prescription, within the scope of his job duties, on April 15, 2010. Thus, the record contradicts the plaintiff's assertion that he received no treatment; rather, it supports a finding that he did not receive the treatment he wanted.

Accordingly, the Court finds that the record supports a finding that the defendant acted within the scope of his employment and, therefore is immune from suit under 42 U.S.C. § 233(a). Because the defendant is immune under the statute, he is also immune from suit under the doctrine set out in *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971), and his exclusive remedy is under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). The defendant's motion for summary judgment is granted, and the plaintiff's cross motion is denied.

**CONCLUSION**

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment [docket no. 33] is granted, and Plaintiff's cross-motion for summary judgment [docket no. 113] is denied. The Clerk is directed to enter final judgment in favor of the defendant on his claim brought under 28 U.S.C. § 1331, and *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). pursuant to Fed. R. Civ. P. 56. However, as stated in the Court's order of May 22, 2013, the plaintiff may submit a proposed amended complaint pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b). The plaintiff shall submit his proposed amended complaint within thirty days of the date of this opinion and order. If the plaintiff fails to comply, this case will be dismissed under the understanding that the plaintiff is no longer interested in pursuing his claims.

Date: November 26, 2013         Enter: _____
                                       JOAN H. LEFKOW
                                       United States District Judge